UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 23 CR 546-1 |
| v. | |
| ANTHONY MONTGOMERY-WILSON also known as "A.J." and "Mike City A.J.," | Hon. Thomas M. Durkin |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

## I.    INTRODUCTION

Anthony Montgomery-Wilson, along with his co-defendant Preston Powell, murdered Stephon Mack on January 27, 2022, with the goal of receiving a monetary payment for the murder. Montgomery-Wilson also possessed a firearm as a convicted felon at the time of the offense. After standing over Mack and executing him at point blank range, Montgomery-Wilson fled the scene on foot and abandoned his cell phone in the stolen car that he and Powell used to commit the murder, prompting Montgomery-Wilson to get a new cell phone several days later.

On February 20, 2022, Montgomery-Wilson was arrested after leading police on a high-speed car chase (including driving 103 mph in a 30-mph zone) in a stolen vehicle. Local authorities sought and received a search warrant for Montgomery-Wilson's cell phone for evidence relating to the theft and possession of the stolen vehicle. The local authorities sought the warrant 11 days after Montgomery-Wilson was arrested and the phone was seized, eight days after Montgomery-Wilson was released from custody, and, according to Montgomery-Wilson, three days after

Montgomery-Wilson requested the return of the cell phone. In the course of reviewing the contents of the cell phone, local authorities discovered evidence relating to the murder-for-hire charged in this case and contacted the FBI, who then sought and obtained a federal search warrant for the cell phone.

Montgomery-Wilson moves to suppress the evidence discovered during the search of his cell phone, primarily criticizing the time it took local law enforcement to seek the search warrant. Montgomery-Wilson also attacks face of the state search warrant, arguing that the warrant was not supported by probable cause. A number of Montgomery-Wilson's arguments are clearly foreclosed by existing law and Federal Rule of Criminal Procedure 41(e)(2)(B), specifically, his arguments relating to when the warrant was "executed" and reviewed by law enforcement. The remainder lack merit based on the facts of this case. The Court should deny Montgomery-Wilson's motion to suppress without an evidentiary hearing for the reasons that follow.

## II.    BACKGROUND

## A.    Murder of Stephon Mack

At the time of his death, Mack was enrolled as a participant at the Youth Peace Center of Roseland, located at 420 West 111th Street in Chicago. Based on records obtained from the Youth Peace Center, as well as witness interviews, Mack arrived at the Youth Peace Center just after noon on January 27, 2022, to meet with his mentor and attend a class. As reflected in the Youth Peace Center's video surveillance footage, at approximately 2:22 p.m., Montgomery-Wilson and Powell pulled into the Youth Peace Center parking lot in a 2014 black Chrysler 300 sedan with tinted

windows, which had been stolen on or about January 20, 2022. The shooters remained in the car waiting for Mack to come outside.

At approximately 2:59 p.m., Mack exited the Youth Peace Center and began walking across the parking lot toward his car. As he did so, Mack looked over at the Chrysler. Before Mack reached his car, Montgomery-Wilson and Powell emerged from the Chrysler—Montgomery-Wilson from the driver-side door and Powell from the front-passenger-side door—and began shooting at Mack.

Mack fled eastbound away from the shooters. Montgomery-Wilson pursued Mack on foot. After crossing the parking lot, Montgomery-Wilson shot at Mack from a distance. Mack eventually collapsed on the other side of the nearby train tracks. Montgomery-Wilson ran over to Mack, stood over him, and executed him. After killing Mack, Montgomery-Wilson fled from the scene on foot. Meanwhile, as Montgomery-Wilson chased down Mack, the Youth Peace Center's security guard stepped into the parking lot. Powell shot him in the left leg. The security guard fell back into the Youth Peace Center, and Powell fled westbound on foot.

After Montgomery-Wilson and Powell fled, law enforcement searched the abandoned Chrysler 300. Inside the car, law enforcement recovered Montgomery-Wilson's cell phone. A search of the Combined DNA Index System, known as CODIS, revealed that Montgomery-Wilson may be the donor of DNA recovered from the phone. Less than a week later, Montgomery-Wilson got a new cell phone, which is the subject of his suppression motion.

**B.      Montgomery-Wilson activated a new cell phone on February 2, 2022.**

In support of his motion to suppress evidence, Montgomery-Wilson submitted an affidavit in which, among other things, he asserts ownership of the cell phone at issue in the state search warrant and the federal search warrant ("Subject Phone 2"), and further alleges that he was in possession of Subject Phone 2 on February 20, 2022, including at the time of his arrest. *See* Dkt. 136-4. Subject Phone 2 was activated on February 2, 2022, six days after Mack was murdered and Montgomery-Wilson's previous cell phone was abandoned inside of the Chrysler 300. Dkt. 136-8 at ¶¶ 29, 54.

**C.      Montgomery-Wilson was arrested on or about February 20, 2022, after fleeing from police while driving a stolen vehicle.**

In late December 2021, a Jeep Grand Cherokee Trackhawk was stolen from the driveway of a residence in New Lenox, Illinois. Dkt. 136-1 at 2; Dkt. 136-5 at 10.[1] The New Lenox Police Department continued to investigate the vehicle theft until Montgomery-Wilson was arrested in February 2022. For example, on the day that New Lenox PD responded to the scene of the vehicle theft, New Lenox PD officers interviewed the victims' neighbors and canvassed for surveillance footage that might have captured the vehicle theft. *Id.* Several days later, on December 31, 2021, a New Lenox PD sergeant spoke with a Chicago Police Department detective about the

---

[1] To make it easier for the Court to locate the government's pin cites to the exhibits to defendant's motion and for consistency, when identifying a page number, the government is referring to the ECF page number at the top of the page (which includes the exhibit number cover sheet in its page count), as some of the exhibits do not have numbered pages.

stolen vehicle and learned that the vehicle had been used in a shooting in Chicago, and that CPD was now looking for the vehicle as well. Dkt. 136-5 at 11.

On January 2, 2022, the affiant for the state search warrant (Detective Tilton with the New Lenox PD) spoke with a detective from the Dyer Police Department and learned that the stolen vehicle was listed for sale on Facebook Marketplace. *Id.* Detective Tilton took investigative steps to pursue this lead. Dkt. 136-5 at 11-12. On January 6, 2022, Detective Tilton spoke with the same detective from CPD from December 31, 2021, and learned that the stolen vehicle was picked up by a license plate reader earlier that day and had also been used in a second shooting in Chicago. Dkt. 136-5 at 12. That same day, Detective Tilton reviewed an all-points bulletin from the Libertyville Police Department indicating that the stolen vehicle was used in a car dealership burglary on December 31, 2021. *Id.*

On February 20, 2022, at approximately 12:06 a.m., a CPD officer observed the stolen vehicle traveling on I-94. Dkt. 136-2 at 2. Montgomery-Wilson was driving the stolen vehicle. *Id.* Montgomery-Wilson fled from Illinois State Police in the stolen vehicle after they tried to pull him over, driving "at speeds in excess of 103 MPH in a 30 MPH zone." *Id.* CPD notified a helicopter, which followed Montgomery-Wilson fleeing in the stolen vehicle until he got out of the vehicle and fled on foot. *Id.* Illinois State Police officers pursued Montgomery-Wilson on foot and apprehended him. *Id.* After being taken to a hospital for care and then released, Montgomery-Wilson was taken to jail and charged with aggravated possession of a stolen vehicle. *Id.*; Dkt. 136-

5

5 at 13. Subject Phone 2 was recovered by law enforcement at the time of Montgomery-Wilson's arrest. Dkt. 136-4; 136-5 at 7.[2]

According to Montgomery-Wilson's motion, Montgomery-Wilson posted a bond on February 23, 2022, and was thereafter released from custody. Dkt. 136 at 2. According to Montgomery-Wilson's affidavit in support of his motion, on February 28, 2022, Montgomery-Wilson went to the Cook County Sheriff's Office in Maywood, Illinois, and attempted to get Subject Phone 2 back (at the time, New Lenox PD was in possession of Subject Phone 2). Dkt. 136-3 at 2; Dkt. 136-4. Montgomery-Wilson alleges that his request was refused by the Cook County Sheriff's Office. Dkt. 136-4.

---

[2] It is unclear whether, as the search warrant affidavit suggests, Subject Phone 2 was recovered from inside of the stolen Jeep or Montgomery-Wilson's person. If the former, then Montgomery-Wilson arguably abandoned Subject Phone 2, just like he abandoned his previous cell phone. *E.g.*, *United States v. Edwards*, 34 F.4th 570 (7th Cir. 2022) ("The [Fourth] Amendment does not apply to abandoned property…No person can have a reasonable expectation of privacy in an item that he has abandoned.") (internal citations omitted). Because Montgomery's Wilson's arguments fail for the reasons that follow, chief among them, that Montgomery-Wilson had no right to possess Subject Phone 2 while he was incarcerated, did not assert a possessory interest in Subject Phone 2 until February 28, 2022, and because New Lenox PD secured a search warrant for Subject Phone 2 three days thereafter, the Court need not resolve this factual issue. However, to the extent the Court is inclined to entertain defendant's request for an evidentiary hearing, and as a result of that hearing, it is determined that Subject Phone 2 was abandoned in the stolen vehicle, then defendant's motion should be summarily denied because under that scenario, defendant would have only first asserted a possessory interest in Subject Phone 2 three days before New Lenox PD secured a warrant for it.

Defendant suggests in a footnote on page one of his motion that his first cell phone is not the subject of a motion to suppress because law enforcement has not yet gotten into it. Dkt 136 at 1, n.1. Montgomery-Wilson clearly abandoned that cell phone, and has not, to date, asserted any possessory interest in it. Any such motion to suppress would be meritless.

**D.      Detective Tilton from the New Lenox PD sought and received a search warrant for Subject Phone 2 on March 3, 2022.**

On March 3, 2022, Detective Tilton from the New Lenox PD submitted a search warrant for Subject Phone 2 in the Circuit Court of Will County, Illinois, for evidence of aggravated possession of a stolen motor vehicle. Dkt. 136-5 at 7. Among other things, Detective Tilton swore in the affidavit in support of the search warrant that he believed that Montgomery-Wilson knew the car was stolen based on Montgomery-Wilson being in possession of the stolen vehicle and fleeing from the stolen vehicle. Dkt. 136-5 at 12. Detective Tilton alleged that he believed evidence of aggravated possession of a stolen motor vehicle would be located in Subject Phone 2 because, based on his training and experience and previous investigations, "cell phones are used to communicate and coordinate the [theft] and transfer of stolen motor vehicles." *Id.* Earlier in the affidavit, Detective Tilton swore that he had "participated in hundreds of investigations into crimes such as…motor vehicle theft, and other felony and misdemeanor level offenses throughout my career." Dkt. 136-5 at 9. Detective Tilton went on to swear that Subject Phone 2 did not belong to the victims of the vehicle theft, and that it was "probable that communication regarding the stolen Jeep Grand Cherokee Trackhawk will be found in [Subject Phone 2] and will assist in identifying additional suspects for the auto theft." Dkt. 136-5 at 12. Detective Tilton detailed the investigation into the theft of the stolen Jeep and the steps that law enforcement took to further the investigation from December 2021 through February 20, 2022, in the affidavit in support of the search warrant. Dkt. 136-5 at 10-13.

The judge to whom the application was presented determined that there was probable cause to issue the warrant to search Subject Phone 2, stating, among other things, "Upon examination of the written complaint, I find that said complaint on its face states facts sufficient to show probable cause for the issuance of the search warrant…." Dkt. 136-5 at 4.

## III.   ARGUMENT

### A.   A search warrant for a cell phone is deemed executed upon seizure of the cell phone rather than upon its later review; thus, the warrant for Subject Phone 2 was deemed executed on March 3, 2022.

Montgomery-Wilson argues that the warrant for Subject Pone 2 was not timely executed—within 96 hours, according to a state statute invoked by Montgomery-Wilson. *See* Dkt. 136 at 2-3, 10-11 (suggesting that the warrant was executed on March 11, 2022, which was not within 96 hours as defendant argues is required by state law). Montgomery-Wilson also suggests the evidence from Subject Phone 2 should be suppressed because once the warrant was executed, law enforcement did not review the data recovered from Subject Phone 2 fast enough. Dkt. 136 at 11. Montgomery-Wilson's arguments are based upon an incorrect theory that the warrant for Subject Phone 2 was "executed" on a date after March 3, 2022. Montgomery-Wilson's arguments fail under a plain reading of Federal Rule of Criminal Procedure 41(e)(B)(2) and the cases interpreting it—including at least one case from the Seventh Circuit.

Rule 41(e)(B)(2) states:

> A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise

8

> specified, *the warrant authorizes a later review of the media or information* consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, *and not to any later off-site copying or review*.

Fed. R. Crim. P. 41 (e)(B)(2) (emphasis added). As the Seventh Circuit and other courts have made clear, the seizure referred to in Rule 41(e)(B)(2) refers to the seizure of the *phone itself*, not the successful seizure of the data from the phone. *United States v. Huart*, 735 F.3d 972, 974 n.2 (7th Cir. 2013) ("We do note that under [Rule 41 (e)(B)(2)], a warrant for electronically stored information is executed when the information is seized or copied—here, when the Rock Valley staff seized the phone."); *see also United States v. Estime*, 2020 WL 6075554, at *13 (S.D.N.Y. Oct. 14, 2020) (collecting cases) ("The majority of courts that have considered the issue agree that, consistent with the language of [Rule 41 (e)(B)(2)] and the advisory committee's notes, the Government does not need to copy the entire storage medium or review the ESI in order to execute a search warrant for ESI. *The majority of these courts have also determined that a search warrant for ESI is executed upon the seizure of the physical storage medium, e.g., a cellphone.*") (emphasis added); *United States v. Salaman*, 742 F. Supp. 3d 221, 238 (D. Conn. 2024) ("Nor does [the defendant] grapple with substantial case authority discussing these provisions and persuasively concluding that, for purposes of Rule 41(e)(2)(A), a search warrant for electronic media is deemed executed upon seizure of the media rather than upon its later review.") (citations omitted).

"There is no established upper limit as to when the government must review electronic data to determine whether the evidence falls within the scope of a warrant." *Estime*, 2020 WL 6075554, at *14 (quoting *United States v. Metter*, 60 F. Supp. 2d 205, 215 (E.D.N.Y.); *see also United States v. Sosa*, 379 F. Supp. 3d 217, 222 (S.D.N.Y.) (searches of cell phones that took 15 months and 10 months to complete, respectively, were not unreasonable even though the government did not proffer a basis for the delay, and the delay did not result in prejudice to the defendant because the searches were completed three months prior to the defendant's trial); *United States v. Burns*, 2008 WL 4542990, at *8-9 (N.D. Ill. Apr. 29, 2008) (finding that 10 months to search a computer was not an unreasonable length of time, even though "[t]he delay in this case was certainly lengthy and the government does not give any reason for the delay."). This is because, as is set forth at length in the advisory committee's notes to the 2009 amendment to Rule 41(e)(2), "Computers and other electronic storage media commonly contain such large amounts of information that it is often impractical for law enforcement to review all of the information during extraction of the warrant at the search location." FED. R. CRIM. P. 41 (e)(B)(2) advisory committee's note to 2009 amendment. The advisory committee's note goes on: "A substantial amount of time can be involved in the forensic imaging and review of information. This is due to the sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs." *Id.*

The New Lenox PD "executed" the search warrant for Subject Phone 2 on the day they acquired the warrant, namely, March 3, 2022. Any suggestion the contrary

is not consistent with Rule 41 and the cases interpreting the Rule, as in any suggestion criticizing the timing of the review of Subject Phone 2. The state statute Montgomery-Wilson has invoked does not appear to relate to electronically stored information and the analysis for electronically stored information is totally different as set forth above. But even if it did relate to electronically stored information, which it does not appear to do so, according to Detective Tilton, Detective Tilton "executed" the warrant on March 4, 2022, at 9:02 a.m., which would have been within 96 hours. Dkt 136-5 at 14. Montgomery-Wilson seems to be conflating "executing" a search warrant on a cell phone with a successful extraction of data from the cell phone, but the two are not the same for the reasons set forth above.

While the arguments set forth in Montgomery-Wilson's motion relating to the timing of "executing" the search warrant on Subject Phone 2 and later reviewing it may apply in some other context, they do not apply to executing a warrant for electronically stored media—in this case, Subject Phone 2. Those arguments are misplaced and must be rejected.

**B.  Montgomery-Wilson's argument's relating to the timing of the federal search warrant lack merit under Rule 41 where law enforcement already had seized the electronic media, and Rule 41 permits a later review of the electronic media.**

Montgomery-Wilson also argues that the federal government violated his Fourth Amendment rights by seeking a separate search warrant for Subject Phone 2 one year later, after being alerted by local authorities of the existence of evidence in Subject Phone 2 relating to the charged murder-for-hire offense. Dkt. 136 at 11. The logic and reasoning supporting the above analysis is why the Court should reject

11

Montgomery-Wilson's argument that the government violated his Fourth Amendment rights by seeking a federal search warrant for Subject Phone 2, even if it was one year later. The federal search warrant was to search a phone that had already been lawfully seized by the State of Illinois pursuant to a search warrant. *See United States v. Roberts*, 2023 WL 4112133, at *17 (N.D. Ala. May 18, 2023) ("It is worth repeating that the iPhone already was in government custody pursuant to a lawful seizure *before* Watson obtained the state search warrant and remained in government custody pursuant to the lawful state search warrant *before* Tynan obtained the federal search warrant."); *United States v. Glatz*, 2023 WL 4503981, at *34 (E.D. Tenn. May 1, 2023) (finding that any delay in seeking a federal search warrant to search the defendant's SD card did not interfere with the defendant's possessory interest in the SD card because the SD card was already in state custody, the defendant was in custody, and as a result, he could not possess the SD card or his cell phone).

At the time the United States sought the search warrant for Subject Phone 2 on March 24, 2023, Montgomery-Wilson was serving a four-year prison sentence and had no right to possess Subject Phone 2, and the State of Illinois had already seized Subject Phone 2 pursuant to its own search warrant. Dkt. 136 at 3; Dkt. 136-8 ¶ 73. And as set forth in the affidavit in support of the federal search warrant, it was because the State of Illinois was reviewing Subject Phone 2 pursuant to its own warrant that law enforcement discovered evidence relating to FBI's investigation and

12

contacted FBI regarding the evidence, prompting FBI to seek a search warrant for Subject Phone 2. Dkt. 136-8 ¶ 55.

**C.      The New Lenox Police Department did not seize Subject Phone 2 for an unreasonable period of time prior to seeking a search warrant for Subject Phone 2.**

Montgomery-Wilson argues that under *United States v. Burgard*, 675 F.3d 1029 (7th Cir. 2012), law enforcement took an unreasonable amount of time to seek a search warrant for Subject Phone 2 in violation of his Fourth Amendment rights. Dkt. 136 at 3-8. New Lenox PD secured a search warrant for Subject Phone 2 within a reasonable amount of time under the Fourth Amendment in light of *Burgard* and *United States v. Jackson*, 132 F.4th 1019 (7th Cir. 2025). In short, the facts of this case are nothing like *Burgard* but analogous to *Jackson*, where the Seventh Circuit found that a 40-day delay between seizing a cell phone and seeking a search warrant for it was reasonable under the Fourth Amendment because the defendant was in custody during that time.

In *Burgard*, a sergeant from the Smithton Police Department ("SPD") seized Burgard's cell phone pursuant to probable cause that Burgard possessed child pornography on his phone. *Burgard*, 675 F.3d at 1031. Burgard was not arrested at the time. *Id.* Burgard went with the SPD sergeant to the police department and received a property receipt for his phone, because Burgard wanted it back. *Id.* The SPD sergeant did not immediately apply for a search warrant. *Id.* Six days elapsed between the SPD sergeant seizing Burgard's cell phone and seeking a warrant for it. *Id.* Burgard was thereafter prosecuted and pleaded guilty but moved to suppress the

13

search of his phone due to the six-day delay in between seizing it and seeking a search warrant. *Id.*

The Seventh Circuit ultimately upheld the seizure and search of the phone, noting, among other things, that "there is no bright line past which a delay becomes unreasonable." *Id.* at 1033-34. The Seventh Circuit then went through the factors that the Supreme Court set forth to assess the reasonableness of a seizure, weighing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Id.* at 1033. Among the things the court considered were whether Burgard asserted a possessory interest in the phone; the state's basis for the seizure (probable cause as opposed to reasonable suspicion), noting that the Fourth Amendment will tolerate longer delays after probable cause seizures; and "whether the police diligently pursued their investigation." *Id.*

Applying the factors, the Seventh Circuit did not find that a six-day delay was unreasonable. *Id.* at 1034. Although Burgard demonstrated a possessory interest in the phone by immediately going to the police station to get a property receipt for the phone to help him get it back, that interest was outweighed by the state's probable cause belief that child pornography would be in the phone. *Id.* Although the Seventh Circuit criticized the officer's diligence, noting that the affidavit was only two pages long and could have been submitted more quickly, the Court did not reverse, as a six-day delay was not so unreasonable as to violate the Constitution and the SPD

14

sergeant was attending to other pressing police matters, such as an intervening robbery investigation. *Id.* at 1034-35.

The facts of this case are unlike the facts of *Burgard*. Montgomery-Wilson was arrested. Burgard was not. Six days passed in between Burgard asserting a possessory interest in his cell phone and SPD securing a warrant for it. Only three days passed in between Montgomery-Wilson asserting a possessory interest in his phone and New Lenox PD securing a warrant for it. These differences are highlighted by *Jackson*.

In *Jackson*, Jackson was arrested and remained in custody. *Jackson*, 132 F.4th at 1020. 40 days later, a detective with the Oshkosh, Wisconsin Police Department sought a warrant for his cell phone, and it was issued. *Id.* The Seventh Circuit rejected Jackson's arguments that this delay was unreasonable under the Fourth Amendment. *Id.* at 1020-21. The Seventh Circuit distinguished *Burgard*, noting that Jackson, unlike Burgard, did not have a right to possess his cell phone in custody. *Id.* at 1021. The Seventh Circuit also noted that Jackson did not attempt to assert a possessory interest in the phone any other way, such as by having the phone released to a friend. *Id.* The Seventh Circuit explained:

> Had Jackson sought to regain or transfer the phone's possession—or indicated any concern about delay in searching its contents—that could have spurred the police to seek a warrant quickly. But he did not, so they did not. The time they took was not unreasonably long. This conclusion finds support in other circuits.

*Id.*

15

Montgomery-Wilson's case is more like *Jackson* than *Burgard*. Montgomery-Wilson had been arrested and was in custody. According to Montgomery-Wilson, he was released on February 23, 2022. Thus, while it is true that New Lenox PD sought a warrant 11 days after seizing the phone, Montgomery-Wilson could not possess Subject Phone 2 for at least three of those days, and did not attempt to assert a possessory interest in Subject Phone 2 by sending a family member or other person to claim possession of it while he was in custody. According to Montgomery-Wilson, the earliest he asserted a possessory interest in Subject Phone 2 was February 28, 2022, three days before New Lenox PD secured the search warrant. *Burgard*, which did not set any bright line rule, certainly does not stand for the proposition that three days is an unreasonable delay of time to seek a warrant under the Fourth Amendment.

Because Montgomery-Wilson was arrested and could not possesses Subject Phone 2, because he did not, after being released from custody, assert a possessory interest in Subject Phone 2 until three days prior to New Lenox PD securing a search warrant for it, and because New Lenox PD's seizure was based on probable cause (which the Circuit Judge from the Circuit Court of Will County explicitly found when issuing the warrant), Montgomery-Wilson's motion should be denied.

## D.    The Search of Subject Phone 2 was Support by Probable Cause

Montgomery-Wilson argues that the evidence recovered from Subject Phone 2 should be suppressed because the face of the affidavit presented to the Circuit Court of Will County does not establish probable cause to search Subject Phone 2 for evidence of aggravated possession of a stolen vehicle. Dkt. 136 at 8-10. Montgomery-

16

Wilson's motion should be denied because Detective Tilton's affidavit provided the Circuit Judge in the Circuit Court of Will County with probable cause to believe that evidence of the crime of aggravated possession of a stolen vehicle would be found inside of Subject Phone 2.

Probable cause "is not a high bar." *Kaley v. United States,* 571 U.S. 320, 338 (2014). It is a "flexible, common-sense standard," which "merely requires that the facts available to the officer would warrant a man of reasonable caution in the belief that the item may be contraband . . . or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983) (internal quotation marks and citations omitted). This standard is primarily objective, but takes into account the totality of the circumstances, considering a reasonable person in the law enforcement officer's position with that officer's knowledge, training, and experience. *United States v. Funches*, 327 F.3d 582, 586-87 (7th Cir. 2003); *United States v. Cortez,* 449 U.S. 411, 417 (1981). "[A]ll that is required for a lawful search is probable cause to believe that the search will turn up evidence or fruits of crime, not certainty that it will." *United States v. Ramirez,* 112 F.3d 849, 851-52 (7th Cir. 1997); *see also United States v. Zamudio*, 909 F.3d 172, 175 (7th Cir. 2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 236, 238 (1983) ("Probable cause for a search warrant exists when the supporting affidavit presents a total set of circumstances creating a 'fair probability' that evidence of a crime will be found.").

In the context of a search warrant, "[d]etermining whether probable cause exists requires a common sense analysis of the facts available to the judicial officer who issued the warrant." *United States v. Carroll*, 750 F.3d 700, 703 (7th Cir. 2014). "A judge in a criminal prosecution must afford 'great deference' to the probable cause finding by the judge who issued a warrant." *United States v. Glenn*, 966 F.3d 659, 660 (7th Cir. 2020) (citing *Gates*, 462 U.S. at 236). "Courts should defer to the issuing judge's initial probable cause finding if there is 'substantial evidence in the record' that supports his decision." *United States v. Sutton*, 742 F.3d 770, 773 (7th Cir. 2014) (citations omitted). Stated differently:

> A magistrate's determination of probable cause is to be given considerable weight and should only be overruled when the supporting affidavit, read as a whole and in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated.

*United States v. Wiley*, 475 F.3d 908, 914-15 (7th Cir. 2007) (quoting *United States v. Newsom*, 402 F.3d 780, 782 (7th Cir. 2005)).

Montgomery-Wilson's challenge to the probable cause finding by the Circuit Court of Will County fails under this standard. There is evidence on the face of the affidavit that a neighbor observed what may have been the car thieves using a phone or a computer inside of a Jeep while committing the vehicle theft or attempting to do so. There is evidence on the face of the affidavit that, at the time law enforcement encountered Montgomery-Wilson on February 20, 2022 (at midnight on the highway), law enforcement knew that the vehicle was stolen two months prior and that the

18

thieves used electronic means to try to sell the vehicle (Facebook Marketplace). Facebook is accessible from an iPhone such as Subject Phone 2. Further, the face of the affidavit set forth that both before and after the vehicle was listed for sale on Facebook Marketplace, the stolen vehicle was used to commit violent crimes in Chicago—two separate shootings—and a car dealership burglary in Libertyville. The face of the affidavit set forth that Montgomery-Wilson fled from Illinois State Police while driving the stolen vehicle after they tried to stop him, indicating that Montgomery-Wilson knew that the vehicle was stolen.

Based on the totality of those circumstances, a neutral judge could reasonably find probable cause that Montgomery-Wilson knew that the vehicle was stolen either because he: (1) participated in the initial theft; (2) knew who had participated in the initial theft because he knew who he got the stolen vehicle from; or (3) bought the stolen vehicle on Facebook Marketplace. Under any of those scenarios, there would have been a "fair probability" that evidence would be in Subject Phone 2 that Montgomery-Wilson: (1) coordinated with co-conspirators to participate in the initial theft (including, but not limited to what the neighbor saw); (2) coordinated with co-conspirators or others to either list the vehicle for sale on Facebook Marketplace or purchase it from Facebook Marketplace using Subject Phone 2; (3) coordinated with co-conspirators or others to take possession of the stolen vehicle on February 20, 2022; or (4) evidence in Subject Phone 2 tying its location data to the theft/possession of the stolen vehicle, including at the victims' residence, the scene of either shooting in Chicago, the scene of the dealership burglary, or the LPR hit referenced in the search

warrant affidavit. While it is true that Montgomery-Wilson activated Subject Phone 2 on February 2, 2022 (a fact that was not known to law enforcement at the time that Subject Phone 2 was seized), the face of the affidavit makes plain that Subject Phone 2 is an iPhone, and even a new iPhone has the ability to back up location data and metadata from an old iPhone, as well as messages (text and/or iMessages) and activity on Facebook. Detective Tilton specifically referenced communications in his search warrant affidavit.

The Circuit Judge in the Circuit Court of Will County explicitly stated that there was probable cause set forth on the face of the affidavit to search Subject Phone 2: "Upon examination of the written complaint, I find that said complaint on its face states facts sufficient to show probable cause for the issuance of the search warrant…." This determination must be given "considerable weight" and "great deference."

**E.    Law Enforcement relied in good faith on a facially sufficient state search warrant.**

In the alternative, even if this Court were to find that the warrant to search Subject Phone 2 was not based on probable cause, Montgomery-Wilson's motion to suppress should still be denied because the Fourth Amendment's exclusionary rule "does not bar the admission of evidence seized in reasonable, good-faith reliance on a search warrant that is later held to be defective." *United States v. Robinson*, 724 F.3d 878, 885 (7th Cir. 2013) (citing *United States v. Leon*, 468 U.S. 897, 905 (1984)). As the Seventh Circuit has explained:

> Overcoming the presumption of good faith is no small feat,
> as an officer cannot ordinarily be expected to question a

> judge's probable cause determination. Reflecting this high standard, we have found that *Leon*'s protection did not apply only on rare occasions—indeed, on only one occasion in recent years.

*United States v. Lickers*, 928 F.3d 609, 619 (7th Cir. 2019).

An officer's "decision to obtain a warrant is *prima facie* evidence that he was acting in good faith." *United States v. Peck*, 317 F.3d 754, 757 (7th Cir. 2003). It is defendant's burden to rebut this presumption. *United States v. Garcia*, 528 F.3d 481, 487 (7th Cir. 2008). He can do so only by showing: "(1) the judge issuing the warrant abandoned his detached and neutral role; (2) the officer was dishonest or reckless in preparing the affidavit; or (3) the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable." *Id.*

Montgomery-Wilson cannot satisfy these requirements. Defendant does not allege, and there is nothing to indicate, that the Circuit Judge in the Circuit Court of Will County abandoned his detached and neutral role. He does not allege that Detective Tilton was dishonest or reckless in preparing the search warrant affidavit. And the affidavit in support of the search warrant was not so lacking in probable cause that Detective Tilton's belief in its existence was entirely unreasonable. To the contrary, the warrant set forth probable cause the Jeep Cherokee was stolen two months prior to its recovery, that it was listed for sale on Facebook Marketplace, that it was used in two shootings in Chicago both before and after it was listed for sale on Facebook Marketplace, that he believed that Montgomery-Wilson knew the vehicle was stolen based on his flight from law enforcement, and that based on his training and experience, Subject Phone 2 would probably have evidence relating to the crime

21

of aggravated possession of the stolen vehicle because cell phones are used to communicate and coordinate the theft and transfer of stolen motor vehicles. For this reason as well, the Court should deny defendant's motion to suppress.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny defendant's motion without an evidentiary hearing.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:  /s/ *Jason A. Julien*
JARED JODREY
JASON A. JULIEN
Assistant United States Attorneys
United States Attorney's Office
219 South Dearborn St., Rm. 500
Chicago, Illinois 60604
(312) 353-5300

## <u>CERTIFICATE OF SERVICE</u>

       I, Jason A. Julien, an attorney, certify that I served a copy of the foregoing Government's Response to Defendant's Motion to Suppress Evidence by filing the same using the CM/ECF System, and that a copy will be provided to all parties of record designated to receive notice.

Respectfully submitted,

ANDREW S. BOUTROS
United States Attorney

By:     <u>/s/ *Jason A. Julien*        </u>
         JARED JODREY
         JASON A. JULIEN
         Assistant United States Attorneys
         United States Attorney's Office
         219 South Dearborn St., Rm. 500
         Chicago, Illinois 60604
         (312) 353-5300