UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANTHONY MONTGOMERY-WILSON,<br><br>　　　　　Defendant. | No. 23 CR 546<br><br>Honorable Thomas M. Durkin |

**DEFENDANT ANTHONY MONTGOMERY-WILSON'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO SUPPRESS EVIDENCE RECOVERED DURING THE SEARCHES OF A CELLULAR TELEPHONE RECOVERED BY LAW ENFORCEMENT ON FEBRUARY 20, 2022**

　　Now comes Defendant ANTHONY MONTGOMERY-WILSON, by his attorneys, Darryl A. Goldberg and Keith A. Spielfogel, and replies to the Government's Response to Defendant's Motion to Suppress (Dkt. 150) and in further support of his Motion to Suppress states the following:

**I. INTRODUCTION**

　　The Government's Response to Defendant's Motion to Suppress (Dkt. 150) fundamentally misinterprets both the law and the significance of the record in this case. While the Government spends considerable effort rehashing the inflammatory facts surrounding Mr. Montgomery-Wilson's alleged conduct in the Mack murder, those facts are entirely irrelevant to the Fourth Amendment analysis at issue here. The central question is not whether Mr. Montgomery-Wilson is suspected of serious crimes, but whether law enforcement complied with the Constitution in seizing and searching his cell phone. On that question, the Government's arguments fail on both the law and the facts.

1

## II. THE GOVERNMENT'S RELIANCE ON FED R. CRIM. P. 41 IS MISPLACED BECAUSE THE RULE DOES NOT GOVERN THE OBTAINING AND/OR EXECUTION OF A STATE COURT SEARCH WARRANT

### A. THE ILLINOIS STATUTORY 96-HOUR REQUIREMENT REMAINS APPLICABLE

The State Court Search Warrant Must Comply with Illinois State Law and the Fourth Amendment, Not FED R. CRIM. P. 41:

> "Properly read, Rule 41 grants the authority to designated judicial officers, federal and state, to issue federal search warrants. The authority granted to state courts under this rule is *in addition* to the state-vested power of those courts to issue a warrant upon a showing that probable cause exists to believe a violation of state law has occurred. While Rule 41 sets out the procedure to be followed in issuing a warrant for a violation of federal law, it obviously should not be contemplated that the federal rule would purport to regulate the procedures through which state courts may issue search warrants predicated on violations of state law."

*United States v. Harrington*, 504 F.2d 130, 134 (7th Cir. 1974) (internal citation omitted). In other words, Fed. R. Crim. P. 41 does not control here because the threshold search and seizure at issue (other than the delay in seeking a warrant) relates to a search warrant issued by an Illinois State Court Judge, based on allegations of violations of Illinois law, sworn to by a local law enforcement officer. A warrant issued under the authority of the state court need not meet all the requirements of Rule 41. *Id. at* 133-34; see also *United States v. Felton*, No. 16-CR-51, 2016 U.S. Dist. LEXIS 202121, at *6 (E.D. Wis. July 6, 2016). By extension, any caselaw that interprets the dictates of Rule 41 is inapplicable, and because the execution of the search warrant was not done within 96 hours, the search warrant is void ab initio and is considered a warrantless search. (725 ILCS 5/108-6: "Any warrant not executed within such time shall be void and shall be returned to the court of the judge issuing the same as 'not executed.'")

2

Put another way:

> "At issue is whether—as a matter of law, given that the facts are undisputed—Rule 41 applies to actions of state law enforcement when conducting a state-law investigation. The weight of legal authority clearly supports the Government's position that the Federal Rules of Criminal Procedure do not govern the actions of state law enforcement officers when, at least at the time of the actions in question, there was no federal involvement in the investigation. *See United States v. Claridy*, 601 F.3d 276 (4th Cir. 2010) (holding that Federal Rule of Criminal Procedure 41 did not apply because the proceeding granting the warrant was not a "federal proceeding"; even though the investigation was conducted by a joint federal and state task force, the warrant alleged violations of state law, the warrant authorized state officers to exercise the warrant, and the warrant was returnable to state court); *United States v. Brewer*, 588 F.3d 1165, 1171 (8th Cir. 2009) (holding that Federal Rule of Criminal Procedure 41 only applies when there is significant federal involvement"; *United States v. Barrett*, 496 F.3d 1079, 1090 (10th Cir. 2007) (holding that Federal Rule of Civil Procedure 41 does not apply even though federal officers executed the search because there was otherwise only "minimal federal involvement" as indicated by the facts that "the warrant was requested by a state law enforcement officer, was issued by a state magistrate judge, and the original plan had been for only state law enforcement officers to execute the warrant"). Indeed, by its own terms, the Rule only governs the authority to issue warrants "[a]t the request of a *federal* law enforcement officer or attorney for the government." Fed. R. Crim. P. 41(b) (emphasis added); *see United States v. Griffin*, 501 Fed. Appx. 751, 756 (10th Cir. 2012) ("Rule 41, by its express text, is applicable in situations '[w]hen a federal law enforcement officer or an attorney for the government presents an affidavit in support of a warrant.'") (citation omitted)."

*United States v. Taylor*, 979 F. Supp. 2d 865, 869-70 (S.D. Ind. 2013). Accordingly, to the extent that the government seeks to justify the delay in execution of the State Court search warrant in reliance on the text of FED R. CRIM. P. 41 or the cases interpreting the same, its reliance is misplaced. The Government's entire argument conflates Illinois state and federal search warrant requirements. The Government argues that Federal Rule 41(e)(2)(B) governs when "execution" occurs, so the state warrant's 96-hour requirement is superseded or is irrelevant. Dkt. 150, p. 11 ("The state statute Montgomery- Wilson has invoked does not appear to relate to electronically stored information and the analysis for electronically stored information is totally different"). This

3

is incorrect. The search warrant at issue is a state warrant issued by the Circuit Court of Will County, Illinois. Dkt. 136-5. State warrants are governed by state law and reviewed for compliance with the Fourth Amendment.

The state statute at issue, 725 ILCS 5/108-6, explicitly provides:

> "The warrant shall be executed within 96 hours of its issuance... Any warrant not executed within such time shall be void and shall be returned to the court of the judge issuing the same as not executed." 725 ILCS 5/108-6.

*See* Dkt. 136-10.

Even if the government is correct, that Rule 41 and its interpretation dictates the analysis here, it is entirely possible for a warrant to comply with Rule 41 and still violate state law and be unconstitutional as it is here. The warrant here was issued on March 3, 2022, at 2:50 p.m. The 96-hour deadline for execution of said warrant was March 7, 2022, at 2:50 p.m. The Government has no basis to argue that the execution of the search warrant that calls for the search of the cell phone — the extraction of data from the cell phone — was performed prior to March 11, 2022. Dkt. 136-6 (GrayKey Progress Report dated "2022-03-11"). Simply put, the warrant was not executed within 96 hours. This is not an instance where execution of a warrant could possibly refer to the seizure of the cell phone itself, since it was already in law enforcement's possession. In fact, the face of the search warrant refers to devices in the possession of the New Lenox Police Department. The search warrant was obtained for an item already in its possession, meaning that the extraction or execution is the time limit the warrant naturally must have referred to. This is based on the face of the warrant and common sense and not a scenario where a search warrant is obtained to seize and then search an item that is not then in law enforcement's possession. By the statute's plain language and the face of the search warrant itself, the warrant became void when it was not executed in time.

The purpose of that provision is to protect against unreasonable searches and seizures. Any evidence derived from that void warrant must be suppressed.

**B. Law Enforcement Reports Establish Non-Compliance, A Void Warrant, And An Unconstitutional Search and Continued Seizure of the Cell Phone**

The Government argues that the New Lenox PD "executed' the search warrant for Subject Phone 2 on the March 3, 2022, the day it acquired the warrant. Dkt. 150 at 10. As a fallback argument, it argues that the 96-hour timing requirement on the face of the search warrant and under Illinois law doesn't relate to electronically stored information, and further argues that even if it did, Detective Tilton "executed" the warrant on March 4, 2022 at 9:02 a.m., which would have been within 96 hours. Dkt. 150 at 11. Not only should the government's legal argument be rejected, it is based on factually inaccurate information that is demonstrated by law enforcement generated reports obtained through discovery and the subpoena process. Although the government is correct that the search warrant at issue appears to have handwriting suggesting that the warrant was executed on March 4, 2022, New Lenox and Joliet PD reports suggest otherwise. *See* Dkt. 136-3 (Narrative Supplement Report: "On 03/04/22 I contacted Det. Mckinney with Joliet PD to assist in using the Graykey device to forensically examine the cell phone. I provided Det. Mckinney with a copy of the search warrant and the physical cell phone."); *see also* Dkt. 136-6 ("GrayKey Progress Report: 2022-03-11 18:56:57 UTC: Initial access started.") At best, the warrant return's statement that execution occurred on March 4 appears to reflect the date when one law enforcement agency called over to the other to arrange for execution, extraction, and analysis and clearly does not reflect the actual date when Detective German and Joliet Police performed the forensic imaging using GrayKey. Regardless of any even potential ambiguity, the fundamental point is that law enforcement did not: 1) obtain a search warrant in a timely manner and with any diligence; 2)

execute the State Court warrant for over a week in violation of the search warrant's own terms; and 3) did not review its contents for nearly four months (July 8, 2022, per Dkt. 136-7). This entire timeline violates the Fourth Amendment's reasonableness requirement.

### III. *ASSUMING ARGUENDO* THAT F<small>ED</small> R. C<small>RIM</small>. P. 41 DOES APPLY AND SHOULD BE CONSIDERED, IT DOES NOT SAVE THE SEARCHES AND/OR SEIZURE AT ISSUE.

To the extent that federal law enforcement had more than minimal involvement in the investigation[1] that led to a state court search warrant application and Rule 41 (and by extension the law that addresses its dictates) applies, it cannot save the government search and seizure of Mr. Montgomery-Wilson's cell phone. Moreover, any search warrant falling under the ambit of F<small>ED</small> R. C<small>RIM</small>. P. 41 would have been obtained subsequent to the delay in seeking a search warrant in the first place, to be discussed *infra* at IV.

F<small>ED</small> R. C<small>RIM</small>. P. 41 provides in pertinent part:

**(e) Issuing the Warrant.**
**(1)** *In General.* **The magistrate judge or a judge of a state court of record must issue the warrant to an officer authorized to execute it.**
**(2)** *Contents of the Warrant.*
**(A) Warrant to Search for and Seize a Person or Property. Except for a tracking-device warrant, the warrant must identify the person or property to be searched, identify any person or property to be seized, and designate the magistrate judge to whom it must be returned. The warrant must command the officer to:**

---

[1] As a threshold issue it should be noted that it is undisputed that Mr. Montgomery-Wilson's cell phone was initially seized without a search warrant and it is therefore a presumptively unreasonable seizure under the Fourth Amendment. That is sufficient to shift the burden to the government to prove that an exception applies, which the government can not do since it can not clearly establish who seized Mr. Montgomery-Wilson's cell phone and under what very specific circumstances. *See, e.g.,* Dkt. 150 at 6, n. 2. Potentially pertinent to the analysis of whether F<small>ED</small> R. C<small>RIM</small>. P. 41 applies, is the extent of federal law enforcement's involvement in the first search warrant process at issue. Specifically, it is unclear how and why Mr. Montgomery-Wilson's cell phone is seized and passed between various law enforcement agencies including the Illinois State Police, Federal Bureau of Investigation, New Lenox Police Department and maybe even the Chicago Police Department, and also whether the Federal Bureau of Investigation specifically directed the New Lenox Police Department to attempt to obtain a State Search Warrant likely knowing that there was an insufficient basis to obtain a federal (or state) search warrant at that time. *See*, Dkt. 136-3 (Narrative Supplemental Report: "I later spoke with FBI Agent Callaghan who advised he received Montgomery-Wilson's cell phone from ISP on 02/22/22 and is willing to turn it over for me to obtain a search warrant for it. I met with Agent Callaghan on 02/25/22 at New Lenox PD and took possession of the cell phone. I drafted a search warrant for the blue Apple iPhone in gray case with IMEI #353075110378317 which was reviewed by ASA Selvey. On 03/03/22 I appeared before Judge Harvey at the Will County Courthouse.")

6

>  (i) ***execute the warrant within a specified time no longer than 14 days***;
>  (ii) execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time; and
>  (iii) return the warrant to the magistrate judge designated in the warrant.
>  (B) **Warrant Seeking Electronically Stored Information**. A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. **Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.**

USCS Fed Rules Crim Proc R 41 (emphasis added)

To the extent FED R. CRIM. P. 41 applies, the search of Mr. Montgomery-Wilson's cell phone (Subject Phone 2) must be suppressed. To begin, Rule 41 commands that a specified time frame must be adhered to for the execution of a search and/or seizure warrant. By the terms of Rule 41, that time period cannot exceed 14 days. FED R. CRIM. P. 41(e)(2)(A)(i). In this case, the warrant specifically calls for execution within 96 hours, which was not done in this case. Moreover, FED R. CRIM. P. 41(e)(B)(2) does not apply to the seizure and subsequent search of the cell phone in this case, because that section of the rule applies to a situation when evidence is initially seized per a search and/or seizure warrant (opposed to a warrantless seizure like in this case) and/or the copying of the media or information at the on-site the location of the seizure which also does not apply here. A typical application of this section of the rule might involve a search warrant issued based on probable cause to believe evidence of a crime such as possession of child pornography would be found on a computer within a home. In that scenario, a raid is conducted and the computer or electronic storage mediums are seized for later review or a forensic copy is made at the time of execution of the search warrant. That is very different from a situation where a device, like Subject Phone 2, is already in possession of the government. There is also another analogous scenario when a warrant might authorize a search and command an initial seizure of evidence (like a

device), but the government then obtains a subsequent warrant to actually search the device seized. Commonsense also dictates that law enforcement cannot unreasonably sit on potential evidence even if it has a lawful basis to seize and search it, and that the timing requirements of the Rule refer to a situation when the storage medium is not in law enforcement's possession at the time a search warrant is sought.

In its Response to Mr. Montgomery-Wilson's Motion to Suppress, the Government ignores the present factual scenario and cites various cases for the proposition that a search warrant for a cell phone is deemed executed upon seizure. First, the only Seventh Circuit case cited by the government is *United States v. Huart* and the premise cited is entirely dicta and non-controlling. Dkt. 150 at 9, citing 735 F.3d. 972, 974 n.2 (7th Cir. 2013) (case where defendant's lack of expectation of privacy in contents of his cellphone while serving a sentence at a hallway house controls). Second, the other case cited in this district is non-precedential and also does not provide support for its argument. In citing *United States v. Burns*, 2008 WL 4542990, at *8-9 (N.D. Ill. Apr. 29, 2008), the government stops its parenthetical quotation short of the most pertinent portion of the analysis in that case that would apply here. Dkt. 150 at 10. Specifically, in citing to *Burns*, the government conveniently ignores a seminal issue in that case — there was not a specific time period called for in the execution of the search warrant which is entirely different than here. In reaching a decision, Judge Gottschall found that "[t]he delay in this case was certainly lengthy and the government does not give any reason for the delay. However, Burns does not assert that the time lapse affected the probable cause to search the computer (nor could he, given that suspected child pornography had already been found on the hard drive), that the government has acted in bad faith, or that he has been prejudiced in any way by the delay, ***and the warrant does not specify a date by which the search must have been conducted***." *Id.*

To the extent FED R. CRIM. P. 41 applies, a time frame was set by the search warrant itself (as well as Illinois law) that was simply not met, which means all evidence must be suppressed. Further, the language of the rule related to electronically stored information does not apply to the factual scenario in this case and should have no bearing on the analysis here. Per the rule and the Fourth Amendment, the search and seizure of Mr. Montgomery-Wilson's cell phone (Subject Phone 2) was unlawful, and all evidence should be suppressed.

## IV. THE GOVERNMENT'S ATTEMPT TO FIND SUPPORT IN *JACKSON* FAILS

### A. *Jackson* Directly Applies to Montgomery-Wilson's Factual Scenario and Supports Suppression

The Government's most critical error lies in its treatment of *United States v. Jackson*, 132 F.4th 1019 (7th Cir. 2025). The Government argues that "the facts of this case are nothing like *Burgard* but analogous to *Jackson*" because Montgomery-Wilson "was arrested" and therefore his possessory interest in the phone was attenuated. *See* Dkt. 150, p. 14-15. However, the Government conveniently ignores the premise of *Jackson* that directly controls here—the Court's express conclusion about precisely this scenario.

In Jackson, the Seventh Circuit explicitly stated:

> "Suppose an arrested person's phone is seized, after which the suspect posts bail and is released. The release presumptively entitles him to regain his possessions, for a phone like a car may be essential to lawful activities." *Jackson*, 132 F.4th at 1021, comparing *Riley v. California,* 573 U.S. 373 (2014) (discussing the importance of cell phones and the data they contain). The value of this possessory interest is why we suggested in *United States v. Burgard*, 675 F.3d 1029 (7th Cir. 2012), that six days' delay in obtaining a warrant to search a cell phone is near the outer limit. Burgard had been stopped and questioned but not arrested, though the police held onto his phone. We affirmed his conviction but cautioned officers not to assume that they could take longer than a week. Our opinion focused directly on the time during which the police deprived Burgard of his possessory interest. Id. at 1031, 1033.

9

*United States v. Jackson*, 132 F.4th at 1021.

Further, while "Jackson did not have the right to keep the cell phone in his possession during custody…and filed no motion for the return of his property, as Wisconsin law explicitly authorized him to do so," Mr. Montgomery-Wilson was presumptively entitled to his cellphone upon posting bond on February 23, 2022 and asserted his possessory interest at the earliest opportunity he could. Specifically, when he was released on bond, he was subject to electronic monitoring and did not have movement until February 28, 2022, when he was permitted to leave his home to attend his court hearing. Immediately after his court hearing, his parents took him to the Maywood Sheriff's Police Department to retrieve his belongings that included his cellphone (Subject Phone 2). *Jackson* meaningfully supports Mr. Montgomery-Wilson's position while undermining the governments and accounts for the factual scenario at issue. The factual record establishes without dispute:

- February 20, 2022: Montgomery-Wilson was arrested and his phone was seized without a warrant. See Dkt. 136-2,4,5.

- February 23, 2022: Montgomery-Wilson posted bond and was released from the Cook County Jail. See Dkt. 136, ¶5. He was placed on Electronic Monitoring as a condition of his release which entitled him to access to his cellphone and other property at all times.

- February 28, 2022: At his first opportunity, when given movement for his court date, Montgomery-Wilson affirmatively asserted his possessory interest to his cellphone by driving to the Cook County Sheriff's Office in Maywood, Illinois, with his property receipt and demanding return of his phone. See Dkt. 136, ¶7; Exhibit 4 (Montgomery-Wilson

>Affidavit stating: "When I arrived at the Sheriffs Office I requested the return of my cell phone from the officer. My request was refused.").

The Government's characterization that this case is "more like *Jackson* than *Burgard*" (Dkt. 150, p. 16) is misleading. The case does not fall within the narrow rule in *Jackson* that favored the government because of Jackson's continuous incarceration and failure to exert his possessory interest. Rather, it falls squarely within the *Jackson* supposition that explicitly rejects the government's position because Mr. Montgomery-Wilson was presumptively entitled to his cellphone upon release from custody and requested the same. Mr. Montgomery-Wilson is positioned entirely different than the defendant in *Jackson* in every respect that mattered to the Seventh Circuit:

| **Factor** | **Jackson** | **Montgomery-Wilson** |
|---|---|---|
| Released from custody? | No—remained in custody | Yes—released February 23, 2022 |
| Asserted possessory interest? | No—"did not, so they did not" | Yes—drove to Sheriff's Office on 2/28 with property receipt and demanded return |
| Time in custody before possessory interest asserted | N/A (continuously incarcerated) | Only 5 days (2/23 released, 2/28 possessory interest formally asserted at first opportunity to do so) |

The plain language of *Jackson* compels the conclusion that the delay here was unreasonable. Where a released defendant promptly asserts a possessory interest in seized property, the government must act with urgency. Here, law enforcement took an additional three days to obtain a warrant after Montgomery-Wilson's formal demand but had already squandered eleven days overall in the investigative relay race that was the phone's journey from ISP to FBI to

11

New Lenox Police.

## B. The Undisputed Factual Record Also Demonstrates a Lack of Diligence

The Government also does not dispute the timeline that Defendant established in his Motion (Dkt. 136). The Government acknowledges:

- February 20, 2022, 00:06 hours: Montgomery-Wilson arrested; phone seized. Dkt. 150, Introduction; Dkt. 136-2 (CPD police report).

- February 22, 2022: Phone transferred to FBI Agent Callaghan. Dkt. 150, p. 5; Dkt. 136-3 (Supplemental Report stating "I received notification from Sgt. Taylor 138 that...One offender, later identified as Anthony S. Montgomery-Wilson...was taken into custody," and "FBI Agent Callaghan...advised he received Montgomery-Wilson's cell phone from ISP on 02/22/22").

- February 25, 2022: Phone transferred from FBI to New Lenox Police Detective Brandon Tilton. Dkt. 150, p. 5; Dkt. 136-3.

- February 28, 2022: Montgomery-Wilson requests return of phone; law enforcement refuses. Dkt. 136, ¶7; Dkt. 136-4 (affidavit).

- March 3, 2022: New Lenox Police obtains search warrant. Dkt. 150, p. 5; Dkt. 136-5.

This timeline alone demonstrates the problem. For five days (February 20-25), the phone sat with ISP and then the FBI while neither agency took any investigative steps to seek a warrant. For three additional days (February 25-28), the phone sat with New Lenox Police while law enforcement again took no action. During these eight days, no warrant application was even drafted. Only after Montgomery-Wilson asserted his possessory interest on February 28 did New Lenox Police eventually appear before a state court judge to obtain the warrant on March 3—a three-day turnaround from the formal assertion of Montgomery-Wilson's possessory interest, eleven days after the seizure of the phone, and eight days after his presumptive entitlement to regain his possession.

### C. The Government Offers No Explanation for the Initial Inaction in Seeking a Search Warrant or the Delay in Reviewing the Extraction of Data

The Government criticizes Defendant's characterization of law enforcement's "lack of diligence" (Dkt. 150, p. 13-15) but provides not a single justification for why five days passed before Detective Tilton even received the phone, or why another six days passed before he appeared before a judge with the warrant application.

*Burgard* is clear: "When police neglect to seek a warrant without any good explanation for that delay, it appears that the state is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable." *Burgard*, 675 F.3d at 1033; s*ee also* Dkt. 136, p. 5-6 (citing cases where government provided no justification: Mitchell (21-day delay unreasonable where "only reason Agent West gave...was that he didn't see any urgency"), Pratt (31-day delay unreasonable where "government's only explanation...was that Pratt committed crimes in both North Carolina and South Carolina and agents had to decide where to seek a warrant," which was "insufficient")).

The Government's Response offers no competing explanation. For example, the Government does not argue that ISP and FBI were otherwise occupied with urgent matters and doesn't even address how or why the cell phone was passed around like a hot potato. Nor does the Government argue that Detective Tilton was unavailable or suggest that the evidence was complex and required additional investigation. The Government's silence on this point speaks volumes. The delay was unexplained and therefore unjustifiable and the failure to promptly secure a search warrant is fatal to the government.[2]

---

[2] In it's Response the Government does not adequately address the second layer of unreasonable delay: the failure to review the phone's contents until July 8, 2022—approximately 120 days after the warrant was executed and the forensic extraction was performed on March 11, 2022. Dkt. 136, ¶11; Dkt. 136-7 (Narrative Supplement Report by Detective Tilton stating "The contents of the March 11, 2022 forensic extraction were not reviewed by the New Lenox Police Department until July 8, 2022"). The Government's argument is that FED. R. CRIM. P. 41(e)(2)(B) permits

**V. THE AFFIDAVIT IS SUPPORT OF THE STATE COURT SEARCH WARRANT FAILS TO ESTABLISH PROBABLE CAUSE AND THERE CAN BE NO GOOD FAITH RELIANCE ON THE SAME AS THE AFFIDAVIT IS CONCLUSORY AND LACKS AN APPROPRIATE NEXUS**

**A. The State Court Search Warrant Affidavit Fails to Establish Probable Cause**

Police may believe that if they search a cell phone of someone believed to be involved in criminal activity they may recover something of evidentiary value, but that is far different from having probable cause to search the cell phone. There is no specific, concrete basis set forth in the New Lenox affidavit connecting the possession of a stolen vehicle to the recovered cell phone. Conclusory statements by the affiant are insufficient because they give the magistrate "virtually no basis at all for making a judgment regarding probable cause." *Illinois v. Gates*, 462 U.S.213 at 239. A magistrate cannot merely ratify the conclusions of the affiant; the affidavit must allow the magistrate to independently determine and evaluate probable cause. *Id*. In this case the officer's belief that he would find evidence in Montgomery-Wilson's cell phone is a mere conclusory statement providing no support for probable cause that the cell phone actually contained evidence of possession of a stolen vehicle. The affiant's second attempt to establish the required nexus is by stating, "I know from previous investigations that cellular phones are used to communicate and coordinate the steal and transfer of stolen motor vehicles." Dkt. 136-5. Again, the affidavit speaks in conclusory terms. There is no mention of a specific case or cases. There are no facts correlating the facts in the supposed cases he knows about to the facts in the Montgomery-Wilson cell phone search. Training and experience may buttress actual, particularized facts but permitting a search based on an officer's experience in other cases and general evidence of wrongdoing in a case

---

reasonable delays in reviewing electronic media. Dkt. 150, p. 10. While this purports to be true as a general matter (to the extent Rule 41 even applies to the analysis here), it does not justify 120 days of inaction post extraction of potential evidence.

14

"would be to invite general warrants authorizing searches of any property owned, rented, or otherwise used by a criminal suspect-just the type of broad warrant the Fourth Amendment was designed to foreclose." *United States v. Schultz*, 14 F.3d 1093, 1097-98 (6th Cir. 1994). Law enforcement had no more than a reasonable suspicion that the cell phone might contain evidence of a crime. Reasonable suspicion is not probable cause.

### B. The Neighbor's Observation of "Phone or Computer Lights" Does Not Create A Nexus Supporting Probable Cause

The Government attempts to cure the conclusory statements in the Search Warrant Affidavit by pointing to the witness observation that Eric Larson saw "phone or computer lights on in the Jeep" while it was being stolen. Dkt. 150, p. 19; See also Dkt. 136-1, p. 1 (New Lenox Case Report stating "Eric saw phone or computer lights on in the Jeep that had backed in"). This observation proves nothing about Montgomery-Wilson's phone in particular, especially since there were multiple vehicles that appeared on the driveway. At best it shows:

- Someone may have used a phone or computer during the theft
- The phone or computer might have been in the stolen Jeep
- The device might have belonged to one of the thieves

But it does not establish probable cause that Montgomery-Wilson's phone contained evidence of the Aggravated Possession of a Stolen Motor Vehicle. Nor does it establish that a phone seized from Montgomery-Wilson on February 20 would contain communications about an event (vehicle theft) that occurred on December 24, 2021—nearly two months earlier.

Furthermore, cellphones are regularly broken, lost, stolen, or replaced. So even if the generic observation about "phone or computer lights" could somehow establish a nexus to Montgomery-Wilson's involvement in the theft, it would not provide probable cause to search a

device that is customary to replace for a variety of different reasons.[3] There is not probable cause to believe, under any set of circumstances presented to the State Court Judge, that evidence of Aggravated Possession of a Stolen Motor Vehicle would be found in Mr. Montgomery-Wilson's cell phone. Moreover, any good faith exception under *Leon* does not apply because "the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984)

### VI. THE GOVERNMENT'S IGNORES THE FACT THAT AT ONE TIME THE FBI HAD THE CELL PHONE IN ITS PYSHICAL POSSESSION AND ALSO HAD ACCESS TO IT FOR MORE THAN A YEAR BEFORE IT SOUGHT A FEDERAL SEARCH WARRANT

In its Response the Government does not appropriately address the fact that the FBI had Subject Phone 2 in its possession two days after Mr. Montgomery-Wilson's arrest, for a period of three days before turning it over to the New Lenox Police. *See*, Dkt. 136-3 (Narrative Supplemental Report: "I later spoke with FBI Agent Callaghan who advised he received Montgomery-Wilson's cell phone from ISP on 02/22/22 and is willing to turn it over for me to obtain a search warrant for it. I met with Agent Callaghan on 02/25/ 22 at New Lenox PD and took possession of the cell phone.) The FBI failed to directly seek a search warrant and did not do so until well over a year later. There is no plausible explanation or excuse for this inaction particularly since their investigation into Mr. Montgomery-Wilson was clearly underway. Alternatively, because the notation in the New Lenox Police Report is unclear, to the extent that the FBI directed New Lenox

---

[3] It also does not account for the fact that "Subject Phone 2 was activated on February 2, 2022," which is well after the Aggravated Possession of a Stolen Motor Vehicle is seeks evidence of. (Government acknowledges: "Subject Phone 2 was activated on February 2, 2022, six days after Mack was murdered and Montgomery-Wilson's previous cell phone was abandoned inside of the Chrysler 300). Dkt. 150 at 4. Moreover, as set forth in the affidavit, "I used the police database CLEAR to locate Chicago PD report CB#30119629 which documented the arrest of Montgomery-Wilson. Montgomery-Wilson was in possession of a blue Apple Iphone with gray phone case, IMEI #353075110378317, SIM Card #89012804320332814358," which means that any diligence by the affiant would have included a search to determine the date in which the phone was activated where he would have learned it was after the theft at issue, further limiting any belief that evidence would exist on that phone.

16

Police to seek a warrant because the FBI agent knew no federal magistrate judge would find probable cause to search the contents of the cell phone, that subterfuge should also be construed against the Government. That would be a further basis for suppression and also support that there was not, and could not be, any good-faith belief in the probable cause supporting the state court search warrant.

### VII. CONCLUSION

Law enforcement cannot justify its delay in seeking to obtain search warrants for Mr. Montgomery-Wilson's cell phone or failing to timely "execute" the state court search warrant obtained in Will County or failing to review the content of the extraction once it was obtained. Further, the state court search warrant was not based on probable cause, and the probable cause was so lacking that good faith cannot save the search. Accordingly, the resulting searches and continued seizure of the cellphone is unlawful, in violation of the Fourth Amendment, and must be suppressed. The eleven-day delay in seeking a warrant, the delayed extraction, and the 120-day delay in attempting to review any extracted data, without appropriate explanation, demonstrates a lack of diligence and indifference which violates the Fourth Amendment under *Burgard*. Further, the FBI's delay of over one year in seeking a federal search warrant is also unreasonable and in violation of the Fourth Amendment. Finally, to the extent that FED R. CRIM. P. 41 applies, the failure to abide by the time limitations under the rule and the face of the initial state court search warrant demand suppression. Accordingly, the Honorable Court should grant Mr. Montgomery-Wilson's Motion to Suppress and suppress from introduction into evidence any evidence obtained from the search and seizure of Mr. Montgomery-Wilson's cellphone (Subject Phone 2) under both the Illinois State and subsequent Federal Search Warrants. In the alternative, given that there are some factual ambiguities that could further provide a basis for

suppression, Mr. Montgomery-Wilson is also requesting an evidentiary hearing. Further, once the Honorable Court grants the motion, a *Kastigar*-type hearing will be necessary to determine what if any evidence was derived from the unreasonable searches of the phone. *See Kastigar v. United States*, 406 U.S. 441 (1972); *Mapp v. Ohio*, 367 U.S. 643 (1961).

                Respectfully submitted,

                */s/Darryl A. Goldberg*
                */s/Keith A. Spielfogel*

                Attorneys for Anthony Montgomery-Wilson

ARDC # 6280112
Darryl A. Goldberg
Law Offices of Darryl A. Goldberg
33 N. Dearborn St.
Suite 1830
Chicago, IL 60602
T: (773) 793-3196
dgoldberg@dgoldbergdefense.com

ARDC# 2689537
Keith A. Spielfogel
190 S. LaSalle St.
Suite 540
Chicago, IL 60603
T: (312) 236-6021
spielfogel@sbcglobal.net