IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ) Case No. 23 CR 546
)
v. )
)
ANTHONY MONTGOMERY-WILSON, )
also known as "A.J." and )
"Mike City A.J., ) Chicago, Illinois
) April 16, 2026
Defendant. ) 10:02 a.m.

TRANSCRIPT OF PROCEEDINGS - CHANGE OF PLEA
BEFORE THE HONORABLE THOMAS M. DURKIN

APPEARANCES:

For the Government: HONORABLE ANDREW S. BOUTROS
UNITED STATES ATTORNEY
BY: MR. JARED C. JODREY
MR. RICHARD M. ROTHBLATT
Assistant United States Attorneys
219 S. Dearborn Street, 5th Floor
Chicago, Illinois 60604

For the Defendant: KEITH A. SPIELFOGEL LAW OFFICES
BY: MR. KEITH A. SPIELFOGEL
190 S. LaSalle Street, Suite 520
Chicago, Illinois 60603

LAW OFFICE OF DARRYL A. GOLDBERG
BY: MR. DARRYL A. GOLDBERG
33 N. Dearborn Street, Suite 1830
Chicago, Illinois 60602

Court Reporter: ELIA E. CARRIÓN, RPR, CRR, CRC
Official Court Reporter
United States District Court
219 S. Dearborn Street, Room 1432
Chicago, Illinois 60604
312.408.7782
Elia_Carrion@ilnd.uscourts.gov

* * * * *

PROCEEDINGS REPORTED BY STENOTYPE
TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings heard in open court; defendant present:)

THE CLERK: Calling Case No. 23 CR 546, U.S.A. v. Anthony Montgomery-Wilson.

MR. JODREY: Good morning. Jared Jodrey and Richard Rothblatt on behalf of the United States.

MR. SPIELFOGEL: Good morning, Your Honor. Keith Spielfogel and Darryl Goldberg on behalf of Mr. Montgomery-Wilson.

THE COURT: All right. We're here for a change of plea. Are the parties ready to proceed?

MR. JODREY: We are.

MR. SPIELFOGEL: Yes, Your Honor.

THE COURT: I believe there's a superseding information that was filed.

MR. JODREY: That's correct, Your Honor. It just hit the docket.

THE COURT: Okay.

(Pause.)

THE COURT: There's been a waiver of indictment. I guess the first order of business, then, is to see if the defendant will waive indictment. There's a written waiver here, which contains the signature of Mr. Montgomery-Wilson, Mr. Spielfogel, Mr. Goldberg.

Why don't we go through some of the colloquy necessary for a change of plea and we'll do it on -- same colloquy will

apply to the waiver of indictment.

All right. I'm going to ask the courtroom deputy to please swear in the defendant.

THE CLERK: Raise your right hand.

(Defendant sworn.)

THE DEFENDANT: Yes.

THE COURT: All right. Sir, do you understand you're now under oath and if you answer any of my questions falsely, your answers may later be used against you in another prosecution for perjury or making a false statement?

THE DEFENDANT: Yes.

THE COURT: All right. I understand you've decided to waive indictment. And an indictment is a document that's returned by a grand jury, and you're waiving indictment and agreeing to proceed by way of criminal information, which is a document filed by the United States Attorney. It has the same practical effect as an indictment. It charges you with a crime. It's something you can plead guilty to or go to trial on, provided you waive your right to proceed before the grand jury.

So let me ask you a couple of questions first. If there's any question you have -- you don't know the answer to or you want to talk to your lawyers first, you're free to talk to your lawyers. I'll interrupt the proceedings and let you talk to them.

Okay?

THE DEFENDANT: Okay.

THE COURT: What's your name?

THE DEFENDANT: Anthony Montgomery-Wilson.

THE COURT: How old are you?

THE DEFENDANT: 27.

THE COURT: And where did you live -- what town did you live in before you were arrested?

THE DEFENDANT: Chicago, Illinois.

THE COURT: What's your marital status?

THE DEFENDANT: Single.

THE COURT: All right. What's the highest level you achieved in school?

THE DEFENDANT: Some college.

THE COURT: What -- can you speak, read, write, and understand English?

THE DEFENDANT: Yes.

THE COURT: What kind of work did you do before you were arrested?

THE DEFENDANT: Fixed cars, mechanic.

THE COURT: Okay. And are you in good physical health?

THE DEFENDANT: Yes.

THE COURT: Have you taken any drugs or alcoholic beverages within the last 24 hours?

THE DEFENDANT: No.

THE COURT: Have you ever been under the care of a doctor for a mental condition?

THE DEFENDANT: No.

THE COURT: Does either the government or defense know of any -- have any doubt as to defendant's competence to both waive indictment and ultimately to plead guilty?

MR. JODREY: No.

MR. SPIELFOGEL: No, Your Honor.

THE COURT: All right. I find the defendant is competent to both waive indictment and ultimately plead guilty.

Tell me the name of the attorneys representing you in this case.

THE DEFENDANT: Keith Spielfogel and Darryl Goldberg.

THE COURT: Have you received a copy of the criminal information?

THE DEFENDANT: Yeah.

THE COURT: First, the indictment in this case and then the criminal information?

THE DEFENDANT: Yes.

THE COURT: All right. Have you had enough time to talk to your attorneys and discuss this case?

THE DEFENDANT: Yes.

THE COURT: Have you told them everything there is to tell them about this case?

THE DEFENDANT: Yes.

THE COURT: Have they done everything you wanted them to do?

THE DEFENDANT: Yes.

THE COURT: Have they done anything you didn't want them to do?

THE DEFENDANT: They did everything I wanted them to do.

THE COURT: Did they do anything you didn't want them to do?

THE DEFENDANT: No.

THE COURT: All right. Are you satisfied with the representation of Mr. Spielfogel and Mr. Goldberg?

THE DEFENDANT: Yes, I'm satisfied.

THE COURT: All right. Now, as I mentioned, you have a right to be indicted by the grand jury, and in order to obtain an indictment, the government has to go to the grand jury. They typically seat 23 people. They need at least 16 for a quorum and at least 12 grand jurors, no matter how many grand jurors show up, between 16 and 23 have to agree there's probable cause to believe a crime was committed and that you committed that crime. That's what a grand jury decides.

You have that right to proceed by way of a grand jury, which is what the indictment is against you. If there's new

charges now brought against you by way of an information, they could go to the grand jury and get that new charge if they wanted, or attempt to get it.

You're waiving or giving up your right to do that. Is that correct?

THE DEFENDANT: Yes.

THE COURT: All right. And the courtroom deputy is going to hand a copy of a document to your attorneys. There's a signature above their names and there's a signature next to their names.

I'm going to ask you: Is that your signature?

THE DEFENDANT: Yes.

THE COURT: Okay. Let me have it back.

Did you read this document before you signed it?

THE DEFENDANT: Yes.

THE COURT: Did you talk to your attorneys about it?

THE DEFENDANT: Yes.

THE COURT: Have enough time to talk to them about it?

THE DEFENDANT: Yes.

THE COURT: Okay.

All right. I find -- is there -- I'll ask defense counsel: Any reason your client shouldn't waive document?

MR. SPIELFOGEL: No, Your Honor.

THE COURT: All right. I find that the defendant has knowingly and voluntarily waived indictment. I accept this

waiver.

Okay. With that, there's been a superseding information filed. Is that correct?

MR. JODREY: That's correct.

THE COURT: All right. And the defendant is prepared to enter a plea of guilty as to the superseding information?

MR. SPIELFOGEL: Yes, Your Honor.

THE COURT: All right. And the difference between the indictment and the superseding information is that the 1958(a) charge is no longer in the superseding information, correct?

MR. JODREY: Correct. Superseding information charges him with using, carrying, brandishing, and discharging a firearm during and in relation to a crime of violence, namely, a murder-for-hire in violation of Title 18, United States Code, Section 924(j)(1).

THE COURT: All right. And that carries with it a maximum penalty of life, but it's not mandatory, correct?

MR. JODREY: That's correct.

THE COURT: And the 1958 charge in Count 1 of the indictment carries with it a mandatory life imprisonment or the death penalty, correct?

MR. JODREY: That's correct.

THE COURT: All right. And the death penalty has been waived in this case?

MR. JODREY: Correct.

THE COURT: By the -- government's not seeking it?

MR. JODREY: That's correct.

THE COURT: All right. Okay. Then let's proceed as to the change of plea as to the superseding information.

I've already asked you about the -- your competence to plead guilty and whether or not your attorneys have represented you competently.

I know you've -- you've now decided not to have a trial and to plead guilty. I want to explain to you your trial rights that you're giving up by pleading guilty.

Under the Constitution and laws of the United States, you're entitled to a trial by a jury on the charges against you.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You have a right to plead not guilty and persist on a not guilty plea.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If you plead not guilty and you have a trial, you'd have a right to a public and speedy trial, you'd have a right to be in the courtroom at all phases of the trial, and to present and object to evidence.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You'd have a right to be represented by counsel of choice at trial or to be appointed counsel if you can't afford one, and your counsel would have a right to make arguments on your behalf, present evidence, object to evidence, and cross-examine witnesses.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You'd have a right to see and hear all the witnesses called to testify against you and use the subpoena power of the court to obtain the attendance of witnesses. A subpoena is simply a document which requires any person to come to court that you and your attorney want to come to court to testify in your defense.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At trial, you wouldn't have to prove you're innocent, and indeed you'd be presumed to be innocent. The government would be required to prove you guilty by competent evidence beyond a reasonable doubt.

Do you understand these rights?

THE DEFENDANT: Yes.

THE COURT: At trial, you'd have a right to testify if you chose to do so and you also have a right not to testify. No inference or suggestion of guilt could be drawn from the fact you didn't testify.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If the trial's a jury trial, the jury would be composed of 12 laypersons selected at random. You and your attorney would have an opportunity to exclude jurors for cause if bias or disqualification is shown and also to exclude a specific number of jurors without cause.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: A jury would have to agree unanimously before you could be found guilty.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You should also be advised the trial could either be a jury trial or a trial by a judge without a jury, which is called a bench trial. I'd be the judge in a bench trial. You can have a bench trial if you, the government, and I all agree to that procedure.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: At trial, whether it's a judge or a jury would be guided by the same rule, which requires that guilt be determined beyond a reasonable doubt.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: If at trial you're found guilty, you have a right to appeal. You also have a right to counsel on appeal. Some possible bases for an appeal of a trial verdict include insufficient evidence, pretrial or trial errors by the judge, and violations of your rights by the government during pretrial or trial stages.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Have you discussed your trial rights with your attorney?

THE DEFENDANT: Yes.

THE COURT: If you plead guilty and I accept your plea, there won't be a trial. I'll enter a finding of guilty today, although the nature of this plea is such that I may defer acceptance of the plea, but I'll enter -- I'll enter a finding of guilty either today; or if I defer it, I'll enter it at the time of your sentencing if I accept the plea agreement. But once that plea is accepted, you'll have no right to withdraw your plea, and I'll sentence you in the future based on all factors in your case, including a presentence investigation report.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Now, there is a written plea agreement. Is that correct? This is to the government.

MR. JODREY: Yes.

THE COURT: And defense?

MR. SPIELFOGEL: Yes, Your Honor.

THE COURT: All right. Have any other agreements or promises -- why don't you tell me what the agreements or promises are in the -- as to the sentencing aspect of the plea agreement.

MR. JODREY: As set forth in the written plea agreement, there is an agreement between the parties that the sentencing range will be between 35 and 45 years.

THE COURT: Okay. Have any other agreements or promises been made that are not in writing in the four corners of the plea agreement?

MR. JODREY: No.

THE COURT: Mr. Spielfogel?

MR. SPIELFOGEL: Yeah, I'm prepared for that question this time, Your Honor. No, there are not.

THE COURT: All right. Thank you.

All right. Do you have a signed copy of the plea agreement?

MR. JODREY: I -- I believe it's been provided.

THE COURT: Is it up here?

You're right. Sorry.

Okay. My courtroom deputy is going to hand this to Mr. Spielfogel.

And, sir, he's going to show it to you, and I'm going to ask you: Is that your signature on this document?

THE DEFENDANT: Yes.

THE COURT: Okay. Did you read this document before you signed it?

THE DEFENDANT: Yes.

THE COURT: Did you discuss it with your attorneys?

THE DEFENDANT: Yes.

THE COURT: Did anyone pressure you to sign this plea agreement?

THE DEFENDANT: No.

THE COURT: Did you sign this plea agreement voluntarily?

THE DEFENDANT: Yes.

THE COURT: Under the plea agreement, you're pleading guilty to the criminal information in this case.

It's a single-count information. Is that correct?

MR. JODREY: That's correct.

THE COURT: All right. So you're pleading guilty to the one-count information.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: I'm now going to explain to you the -- what your consequences are when you plead guilty. If I accept your plea of guilty, you'll be judged guilty of a felony, and

that adjudication of guilt may deprive you of valuable civil rights, such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess firearms.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Are you a United States citizen?

THE DEFENDANT: Yes.

THE COURT: Were you born in the United States?

THE DEFENDANT: Yes.

THE COURT: The information -- the indictment, the criminal information, and the plea agreement are all matters of public record and can be disclosed to any party.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Will the government state what the maximum penalties are in this case?

MR. JODREY: The maximum penalties are as follows: A maximum sentence of life imprisonment, a maximum fine of $250,000, a term of supervised release of not more than five years, restitution to the victims of the offense in an amount to be determined by the Court, and there's also a $100 special assessment.

THE COURT: Sir, do you understand what the maximum penalties are in this case?

THE DEFENDANT: Yes.

THE COURT: There was a mention of supervised release. That's something that follows incarceration and there's conditions attached to supervised release and if you violate those conditions, you can go back to jail.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay.

All right. What is the preliminary calculation of the offense level, the criminal history category, and the resulting advisory sentencing guideline?

MR. JODREY: Based on the facts known to the government, we anticipate that the offense level is 42, which combined with an anticipated criminal history category of VI results in an anticipated advisory sentencing guideline range of 360 months to life.

THE COURT: All right. Does defense agree with these preliminary calculations?

MR. SPIELFOGEL: Yes, Your Honor.

THE COURT: All right. Mr. Montgomery-Wilson, have you and your attorneys talked about how the Sentencing Commission Guidelines might apply to your case?

THE DEFENDANT: Yes.

THE COURT: I'm not going to be able to determine the guideline range for your case until after the presentence

report has been completed and you and the government have had an opportunity to challenge the facts and calculations reported by the probation officer.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And even after your initial advisory guideline range has been determined, I have the authority to depart -- or actually, to vary upward or downward from that range, and I also have to examine other statutory sentencing factors that may result in the imposition of a sentence that's either greater or lesser than the advisory guideline sentence, subject to if I accept your plea, I must sentence you to a sentence between 35 and 45 years.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you also understand parole has been abolished and you're sentenced to prison, you'll do most of that time in jail. You get credit for good behavior in jail, but you won't be paroled. There's no parole in the federal system anymore.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: And if your sentence is more severe than you expected -- if I accept the plea, it'll have to be between 35 and 45 years -- but if the sentence is more severe than you

expected within that range, if I accept it, you'll still be bound by your plea of guilty and have no right to withdraw it.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: You also understand, because it's a plea agreement that contains a requirement that I accept sentencing you to a range of 35 to 45, I have the ability -- not just the ability, but the right to reject the plea agreement if I believe that I -- it's not acceptable.

I don't tell the parties whether it's too low or too high, but I can simply reject it. You can then proceed on the original indictment and go to trial; or your attorneys can speak to the government and perhaps present a new plea agreement. But that would happen if I reject the plea agreement.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Okay. Is there any waiver of appeal in the plea agreement?

MR. JODREY: Yes, Your Honor. On page 17, there is a full appellate waiver.

THE COURT: Why don't you describe that.

MR. JODREY: As set forth on page 17 of the plea agreement, the defendant understands he's waiving all appellate issues that might have been available if he had exercised his

right to trial. Now, he's aware that under the law affords the defendant a right to appeal his conviction in the sentence imposed. But acknowledging that, the defendant knowingly waives the right to appeal his conviction, any pretrial rulings by the Court, and any part of the sentence or the manner in which the sentence was determined, including any term of imprisonment and fine within the maximums provided by law in exchange for the concessions made by the United States in this plea agreement.

In addition, the defendant is also waiving his right to challenge his conviction and sentence in the manner in which the sentence was determined and any other -- I'm sorry -- any collateral attack or future challenge, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255.

The waiver does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit the defendant from seeking a reduction of sentence based directly on change in the law as applicable to defendant, and that prior to the filing of defendant's request for relief has been expressly made retroactive by an act of Congress, the Supreme Court, or the United States Sentencing Commission.

THE COURT: All right. Sir, a lot of legalese there, but do you understand it?

THE DEFENDANT: Yes.

THE COURT: All right. Basically, you're giving up all your rights to appeal, other than if you believe your plea was involuntary or you received ineffective assistance of counsel or if there is a change in the law based on the legislature or Supreme Court precedent or some other legal authority that is expressly retroactive and would affect the type of sentence you get. But other than that, you really have no rights to appeal, in summary fashion, the -- the actual language contained in the plea agreement you signed.

Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Have I correctly stated the exceptions?

MR. JODREY: That's correct.

THE COURT: Defense agrees?

MR. SPIELFOGEL: Yes, Your Honor.

THE COURT: Okay.

All right. Sir, has anyone forced you in any way to plead guilty?

THE DEFENDANT: No.

THE COURT: Has anyone threatened you in any way to cause you to plead guilty?

THE DEFENDANT: No.

THE COURT: You've acknowledged you've signed this plea agreement, correct?

THE DEFENDANT: Yes.

THE COURT: Other than the plea agreement, have any promises been made to you to cause you to plead guilty?

THE DEFENDANT: No.

THE COURT: Is your decision to plead guilty entirely voluntary?

THE DEFENDANT: Yes.

THE COURT: Have any promises been made to you about what your sentence will be, other than it'll be between 35 and 45 years if I accept the plea agreement?

THE DEFENDANT: No.

THE COURT: Okay. The final decision as to whether or not I accept your plea agreement is up to me. I may reject it, I may accept it. If I accept it, your sentence will be between 35 and 45 years. If I reject it, I've already told you what your options are. You're -- and we'll proceed accordingly if I reject it.

Now, I have to be convinced you're guilty beyond a reasonable doubt before I'll accept your plea of guilty, so listen carefully to what the government attorney says the evidence would show if this case went to trial. After he's done going through that, I'm going to ask you if you agree with what he says, whether you disagree with any part of it, or whether you wish to add to any part of it. And, finally, I'm going to ask you to tell me in your own words what you did. It doesn't have to be lengthy. It's not meant to be a statement

in mitigation, but I need to hear from you in your own words that you're pleading guilty because you are guilty. I'll give you a chance to talk to your lawyers before you make any statement like that.

So, please, first listen to what the government says the evidence would show.

MR. JODREY: Your Honor, just before I do that --

THE COURT: Yeah.

MR. JODREY: -- I just wanted to note that there is also a forfeiture allegation in --

THE COURT: Oh, go ahead.

MR. JODREY: -- here, which -- which the defendant's agreeing to forfeit the firearm used in the offense, namely, a Ruger AR-556 and the associated ammunition.

THE COURT: All right. Sir, do you understand that? They're taking your gun. They're going to forfeit it.

Do you understand that?

THE DEFENDANT: Uh, yes.

THE COURT: All right. And that's part of the plea agreement, correct?

MR. JODREY: That's -- that's correct.

THE COURT: All right. Do you understand that, sir?

THE DEFENDANT: Yes.

THE COURT: All right. Anything else I need to ask on that subject, from the government?

MR. JODREY: No.

THE COURT: And from defense?

MR. SPIELFOGEL: No, Your Honor.

THE COURT: All right. Proceed with the -- what the evidence would show if this case went to trial.

MR. JODREY: If this case went to trial, the government's evidence would show --

THE COURT: Slow down a little bit.

MR. JODREY: Oh, sorry.

-- that on January 22nd of 2022 the defendant knew he had previously been convicted of a crime punishable by a term of imprisonment in excess of one year; namely, aggravated unlawful use of a weapon, on or about September 5, 2018, as described in the plea agreement.

The government would show that despite being a convicted felon on January 22nd of 2022, defendant was in possession of a Ruger AR-556, bearing Serial No. 85861994, which defendant acknowledges and what we would show was manufactured outside the state of Illinois and had traveled interstate commerce prior to his possession of the firearm.

That evening, the defendant and Individual A drove in a black 2014 Chrysler 300 sedan to a school located in the area of 6200 South Princeton Avenue in Chicago. They parked the Chrysler in the school parking lot. Defendant was armed with the Ruger AR-556 because he was there to shoot and kill

Victim B.

Individual A was also armed with a firearm. At approximately 11:15 p.m. Victim B exited one of the school buildings. Around the same time, the defendant and Individual A got out of the Chrysler and shot at Victim B, who survived the shooting.

The government's evidence would also show that on the afternoon of January 27, 2022, defendant and Individual B drove in the Chrysler to the Youth Peace Center of Roseland located at 420 West 111th Street in Chicago. Defendant and Individual B were there to shoot and kill Victim A as consideration for the promise and agreement to pay a sum of money from Individual C. To that end, defendant was armed with the Ruger AR-556, and Individual B was in possession of a firearm.

The government's evidence would further show that defendant and Individual B arrived at the Youth Peace Center in the Chrysler at approximately 2:22 p.m. They waited in the Youth Peace Center parking lot for Victim A to leave the building. At approximately 2:59 p.m. Victim A exited the Youth Peace Center. As Victim A walked across the parking lot to his car, defendant and Individual B got out of the Chrysler and shot at Victim A.

Victim A fled eastbound away from the shooters. Defendant pursued Victim A on foot and continued shooting at

him. Victim A eventually collapsed on the other side of the nearby train tracks. Defendant approached Victim A and shot him numerous times. Victim A died as a result of the shooting. Defendant fled from the scene on foot and concealed the AR-556 in the backyard of a nearby vacant residence.

As defendant chased down and killed Victim A, Individual B shot the Youth Peace Center security guard, who survived the shooting. After the shooting -- after shooting the security guard, Individual B fled from the scene on foot.

The government's evidence would also show that following the murder of Victim A, defendant collected money that had been offered as consideration for Victim A's murder.

THE COURT: All right. Sir, have you heard the statement of the government?

THE DEFENDANT: Yes.

THE COURT: Is the statement correct?

THE DEFENDANT: Yes.

THE COURT: Do you disagree with any part of the statement?

THE DEFENDANT: No.

THE COURT: Do you wish to add to any part of the statement?

THE DEFENDANT: No.

THE COURT: And as I told you, when someone pleads guilty in front of me, I ask them to make a statement to me to

tell me what they did.

Do you need to talk to your lawyers about that before you make your statement?

THE DEFENDANT: No.

THE COURT: Tell me what you did.

THE DEFENDANT: On January 27, 2022, I shot and killed somebody in Chicago, and because I was a felony, I wasn't able to -- I wasn't -- I couldn't possess or use the firearm.

THE COURT: Did you do it because you were going to get paid by someone?

THE DEFENDANT: No.

THE COURT: Did you get paid?

Talk to your lawyer if you want.

MR. SPIELFOGEL: Maybe if we can have a minute?

THE COURT: Yeah, you may.

It's in the plea agreement that he signed.

(Counsel and defendant conferring.)

MR. SPIELFOGEL: Okay. I believe he understands now. Yes.

THE COURT: Did you kill the person because you were going to get paid to kill him?

THE DEFENDANT: Yes.

THE COURT: And did you get paid to kill him?

THE DEFENDANT: Yes.

THE COURT: All right.

Does either the government or defense know of any reason why the defendant should not plead guilty?

MR. JODREY: No.

THE COURT: And, sir, do you -- and defense, any --

MR. SPIELFOGEL: No, Your Honor.

THE COURT: And, sir, do you have any questions of me before I ask you what your plea is, guilty or not guilty?

THE DEFENDANT: No.

THE COURT: What is your plea to the criminal information? Guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: Since you acknowledge you're in fact guilty as charged in the criminal information -- criminal information, you've had the assistance of counsel, you know of your right to a trial, and what the maximum possible punishment is and you're freely and voluntarily pleading guilty, I will defer acceptance of the plea of guilty until I have seen the presentence report and we -- at the time of sentencing, I will either let you know that I accept the plea agreement and sentence you subject to the terms of that plea agreement or I'll reject the plea agreement and we'll keep the trial date we have set.

What is the trial date we have set?

MR. JODREY: For this defendant, it's July 6th.

THE COURT: Okay. We'll proceed to trial.

So I'll order a presentence investigation to assist me in making a decision whether or not to accept the plea agreement. I'll order that the recommendation of the probation office be disclosed to both sides. You'll be asked to give information for that report, and your attorney may be present if you wish. You must be truthful and cooperate completely with the probation officer in connection with the presentence investigation.

Anything else, other than setting the date and the timing for filing of sentencing memos?

MR. JODREY: No, but I think we're going to have to strike the trial date, right?

THE COURT: Yeah, you're right, because I think by the time this presentence report is done, if I reject it, it's not realistic to expect the parties to be prepared to go trial so quickly after that sentencing date.

MR. JODREY: Correct.

THE COURT: So we will strike the sentencing date.

MR. JODREY: Trial date.

THE COURT: I'm sorry, trial date. We're going to set a sentencing date and strike -- set a trial -- strike the trial date and set a sentencing date.

When can we do the sentencing?

THE CLERK: We have available October 5, 2026, at 10:00 a.m.

THE COURT: How's that work for the government?

MR. JODREY: That works for the government.

THE COURT: And defense?

MR. SPIELFOGEL: That's fine, Your Honor.

THE COURT: All right. What are the interim dates, then?

THE CLERK: The PRS -- PRS deadline is August 31, 2026; sentencing memos, September 21, 2026; and objections to PSR, September 28, 2026.

THE COURT: Okay. Very good.

Anything else we need to discuss today?

MR. JODREY: Nothing further.

THE COURT: From defense?

MR. SPIELFOGEL: Nothing else, Your Honor.

THE COURT: All right. What is -- I know Mr. Powell's attorney is not here, but we have a trial date set in that case.

MR. JODREY: We do. August 3rd.

THE COURT: All right. Any indication -- I believe that's not going to trial.

MR. JODREY: It's possibly not going to trial. We'll see.

THE COURT: What's that?

MR. JODREY: We're -- we're in plea discussions.

THE COURT: All right. Well, do we have a status set

in that case?

MR. JODREY: I think it's just the pretrial conference.

THE COURT: Okay. Why don't -- why don't you provide me -- and if it's under seal, so be it, but why don't you provide me, along with defense counsel, a joint written status report in three weeks.

Three weeks is when? I can figure this out, but maybe you can put it on the record.

THE CLERK: We have May 7th.

THE COURT: All right. So a joint written status report on May 7th letting us know the status of plea discussions or whether or not the trial date ought to be stricken, and you can file it under seal if -- if you believe that's necessary.

MR. JODREY: Will do.

THE COURT: Okay. Thank you all.

MR. SPIELFOGEL: Thank you, Your Honor.

(Concluded at 10:30 a.m.)

* * * * *

I certify that the foregoing is a correct transcript of the record of proceedings in the above-entitled matter.

*/s/ Elia E. Carrión* — *28th of June, 2026*

Elia E. Carrión, RPR, CRR, CRC
Official Court Reporter